# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| EPHRAIN S., | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 2258 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Ephrain S.[1] applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§416(i), 423, 1382c(3)(A), nearly seven years ago. (Administrative Record (R.) 463-69). He claimed that he became disabled as of November 13, 2007 (R. 463), due to lumbar spine damage, tendinitis in both arms, groin injury, esophageal problems, prostate problems, and arthritis in both knees and back. (R. 529). Over the ensuing several years, Mr. S.'s application was denied at the initial, reconsideration, and administrative law judge (ALJ), levels. (R. 133-211). The appeals council then remanded his claim back to the ALJ for another decision, directing the ALJ to make another residual functional capacity finding with appropriate support from the record, and to obtain evidence from a vocational expert as to the effect of Mr. S.'s limitations on the occupational base and whether he

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only his first name and the first initial of his last name.

has any transferable skills. (R. 17, 214-15). On remand, the ALJ again found that Mr. S. was disabled as of August 6, 2015, which was after his insured status expired on June 30, 2014, meaning he was entitled to SSI but not DIB. (R. 17-30). It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Mr. S. filed suit under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c). Mr. S. asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**ARGUMENT**

**I.**

Mr. S. is 58 years old, and was nearly 55 at the time his insured status expired. (R. 17, 463). He is in the army reserves and has work experience as a corrections officer, a teaching assistant and, most recently, in sales at a home and garden center, which involved heavy work and a great deal of lifting, and was semi-skilled. (R. 118).

Mr. S.'s medical record is massive, weighing in at over 1200 pages (R. 609-1891), covering treatment for a laundry list of impairments, mostly due to problems with his back. But, as is often the case, and according to the parties in this case, very little of it is pertinent. Mr. S. cites to no more than two dozen pages of medical evidence to support his argument for overturning the ALJ's decision. (Dkt. #16, at 1-2, 8-9). The Commissioner cites to a similar amount. (Dkt. #20, 1, 5-9). Accordingly, we shall discuss only those treatment records and medical findings that the parties tell us matter.

After an administrative hearing – at which Mr. S., represented by counsel, and a medical expert and a vocational expert testified – the ALJ determined he was disabled, but not before the

2

expiration of his insured status. The ALJ found that Mr. S. had severe lumbar degenerative disc disease and lumber radiculopathy. (R. 20). The ALJ found that other impairments – edema, diverticulitis, and personality disorder – were non-severe. (R. 20-22). His mental impairment left him with only mild limitations in his ability to interact with others and maintain concetration, persistence, or pace, and no limitations on his ability to understand, remember, and apply information, or adapt and manage himself. (R. 20). None of Mr. S.'s impairments, singly or in combination, amounted to a condition that met or equaled an impairment assumed to be disabling in the Commissioner's listings. (R. 22). In reaching that conclusion, the ALJ specifically considered listing 1.04, for disorders of the spine. (R. 23).

The ALJ then determined that Mr. S could perform "light work . . . except: can stand and walk in combination up to one hour at a time and a total of four hours in an eight-hour workday; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, bend, stoop, kneel, crouch and crawl; cannot work around hazards such as unprotected heights and exposed moving mechanical parts; cannot tolerate concentrated exposure to extreme cold; must avoid even moderate exposure to excessive vibration; and is precluded from commercial driving." (R. 22). Along the way, the ALJ said that he found Mr. S.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for reasons explained in this decision." (R. 23). The ALJ based this conclusion on the medical record, and Mr. S.'s sporadic work history prior to his alleged onset date. (R. 23-27).

The ALJ then summarized the medical record and assessed reports from doctors. He gave great weight to the opinion given by the medical expert at the administrative hearing, as the expert

was familiar with the regulations and his opinion was consistent with the weight of the objective medical findings. (R. 23-24). The ALJ gave some weight to the opinion from the doctor who examined Mr. S. for the agency, but felt Mr. S. was more restricted in keeping with the findings of the medical expert and agency reviewing physicians. (R. 25). The ALJ assigned the opinions from the reviewing agency physicians substantial weight as they were generally consistent with the weight of the medical evidence. (R. 26). The ALJ gave limited weight to an opinion from a doctor from Veterans' Affairs because it was unsigned and was pertinent to military service as opposed to work. (R. 26-27).

Finally, the ALJ gave considerable weight to the opinion of Mr. S.'s treating physician as to Mr. S.'s ability to stand and walk in an eight-hour day, saying it was consistent with his treatment and objective findings. Still, at the same time, the ALJ rejected those portions of the opinion that had to do with how long Mr. S. could walk or sit at one time, saying that was arbitrary and not supported by objective testing. (R. 27).

The ALJ rejected that portion of the doctor's opinion that concluded Mr. S. had to change positions frequently: sit for only 20-30 minutes at a time, stand for only 5-10 minutes at a time, and walk for 30-45 minutes at a time. He also rejected the doctor's recommendation that Mr. S. take unscheduled breaks during the workday and rest for 15-20 minutes during the workday. (R. 27). The ALJ felt these limitations were arbitrary and based on subjective complaints rather than objective findings. (R. 27).

The ALJ then found that, as of August 6, 2015, the date on which Mr. S. reached "advanced age" under the regulations, the Medical-Vocational Guideline directed a conclusion that Mr. S. was disabled under the Act. (R. 29). Prior to that date, because the Guidelines would have directed a

finding of "not disabled" if Mr. S. had the capacity for a full range of light work, the ALJ relied on the testimony of the vocational expert as to whether there were jobs existing in significant numbers in the national economy that Mr. S. could do. As the vocational expert stated that he could be a cashier (60,000 jobs), a rental clerk (50,000 jobs), or an inspector (45,000 jobs), the ALJ determined that, prior to August 6, 2016, Mr. S. was not disabled and not entitled to benefits under the Act. (R. 29-30).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Id.* at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

In the Seventh Circuit, an ALJ also has an obligation to build what is called a "logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's

5

reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court might otherwise agree with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build the required "logical bridge."

*Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) was the first case in this Circuit to use the phrase in the context of a Social Security case. There, in an Opinion by Judge Posner, the court said: "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."[2] The point Judge Posner sought to make in *Sarchet* was that unexplained conclusions by Administrative Law Judges are not persuasive. It was never meant to be a self-defining test or formula. *Cf., United States v. Edwards,* 581 F.3d 604, 608 (7th Cir. 2009)("We recall Holmes's admonition to think things not words...."). The Seventh Circuit has said that this is a "lax" requirement. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir.2008).[3]

---

[2] *See also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

[3] The phrase "logical bridge," first appeared in a judicial context in *Thompson v. Clifford*, 408 F.2d 154,167 (D.C. Cir. 1968), where Spottswood Robinson said: "'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." A year after *Sarchet*, Judge Posner again employed the phrase, this time in *J.C. Penney Co. v. NLRB,* 123 F.3d 988, 995 (7th Cir.1997), which citing *Sarchet,* said: "[a]s we have said before, [w]e cannot uphold a decision by an administrative agency ... if ... the reasons given by the trier of fact do
(continued...)

**III.**

Mr. S. advances three arguments for overturning the ALJ's decision. He submits that the ALJ failed to follow the applicable Social Security Ruling regarding the effect his limited capacity for light work has on the occupational base available to him. Second, he contends that the ALJ improperly failed to give controlling weight to the opinion of his treating physician. And, finally, he argues that the ALJ failed to adequately assess his allegations regarding the effects of his impairments. Any other arguments Mr. S. might have raised are deemed waived. *Truelove v. Berryhill*, _F.Appx._, 2018 WL 6242284, at *5 (7th Cir. 2018); *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

**A.**

Mr. S. first argues that the ALJ failed to apply the Medical Vocational Guideline Rule that would have directed a finding that he was disabled as of his 50th birthday. He maintains that Social Security Ruling 83-12 required the ALJ to determine whether his limitations caused a slight or significant erosion of the occupational base, as his capacity for work fell between light work and sedentary work. Where, as here, a claimant's exertional capacity level falls between two rules that direct opposite conclusions – "not disabled" at the higher exertional level and "disabled" at the lower exertional level – the Ruling directs ALJs to consider whether:

> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the

---

³(...continued)
not build an accurate and logical bridge between the evidence and the result." *Chao v. Gunite Corp.*, 442 F.3d 550, 558 (7th Cir. 2006).

regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

The Ruling goes on to advise that, where "the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work," and "more difficult judgments are involved as to the sufficiency of the remaining occupational base," the ALJ should consult a vocational expert. SSR 83–10, 1983 WL 31251, at *1-2.

While it's clear the ALJ followed the Ruling here – he relied on vocational expert testimony that there were significant numbers of jobs Mr. S. could perform – Mr. S. insists that there must be a specific finding from the ALJ as to whether Mr. S.'s additional limitations had a slight or significant effect on the work base. [Dkt. # 16, at 5-6]. Why? The ALJ consulted a vocational expert, as recommended by SSR 83-12, and he cited examples of over 150,000 jobs Mr. S. could perform despite his limitations. In other words, in the parlance of SSR 83-12, "the remaining occupational base . . . [is] sufficien[t]." To accept Mr. S.'s argument is to reject common sense, which has a significant role to play in all litigation,[4] including Social Security litigation. *See Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir.

---

[4] *See, e.g., United States v. Montoya De Hernandez*, 473 U.S. 531, 542 (1985); *United States v. Reichling*, 781 F.3d 883 (7th Cir. 2015); *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743 (1st Cir. 1995); *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992) (Breyer, C.J.); *United States v. Ali*, 952 F.2d 405 (7th Cir. 1992);– including bond decisions. *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989); *United States v. Malekzadeh*, 789 F.2d 850, 852 (11th Cir.1986); *United States v. Carswell*, 144 F.Supp.2d 123, 135 (N.D.N.Y. 2001); *United States v. Chappelle*, 51 F.Supp.2d 703, 706 (E.D. Va. 1999). *See also* Posner, How Judges Think, 116 (Harvard University Press 2008). *Cf. Begay v. United States*, 2018 WL 557853, at *10 (D.N.M. 2018)("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' ").

2009)(plaintiff's position rejected as it "downplay[ed]... common sense.").

If this was somehow an error – and we do not find that it was – it was harmless. The question remains whether 155,000 jobs is a significant number. If it is, Mr. S. is not disabled under the Act. Mr. S does not argue it isn't, nor could he successfully. *See, e.g., Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009)(collecting cases). As such, "it is predictable with great confidence that the agency will reinstate its decision on remand . . . [meaning that] remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). *See also Sarchet*, 78 F.3d at 309 ("When the decision of that tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless."); *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). *See also Chenery SEC v. Chenery Corp.,* 332 U.S. 194 (1947)(the law does not require futile gestures); *Cruz-Funez v. Gonzales*,406 F.3d 1187, 1191 (10th Cir. 2005)(same).

**B.**

Next, Mr. S. complains that the ALJ failed to weigh properly the medical opinion from his treating physician, Dr. Purohit. Dr. Purohit filled out a form from Mr. S.'s attorney in October of 2014. At that time, Dr. Purohit had been treating Mr. S.'s back impairment for 5 years, seeing him about every 6 months. (R. 891). The doctor reported that Mr. S. had pain in his elbow, back, knees, and legs; that it was constant; and that it was 4/5 on a scale of 0 to 10 in severity. (R. 892). Dr. Purohit cited the clinical signs that supported his opinion as: "decreased sensation R leg, 4/5 motor

9

exam bilaterally, normal gait & reflexes." (R. 892). The symptoms in his legs dated back to 1980 and back to 2007 in his back. (R. 892). They might occasionally interfere with concentration. (R. 893).

Dr. Purohit felt that, despite his impairments, Mr. S. retained the functional ability to work in a competitive environment, at least in a sedentary occupation, on a full-time basis. (R. 893). The doctor explained that this was due to a mild disc bulge, but that he could limit his activity. (R. 893). Dr. Purohit said that Mr. S. could sit for 20-30 minutes at a time, stand for 5-10 minutes at a time, and walk for 30-45 minutes at a time. (R. 893). Mr. S. would need to take 3 breaks a day and one 15-20 break to rest. (R. 894). But he would miss work less that once a month. (R. 893). He could constantly lift up to 10 pounds. Up to 20 pounds frequently, and up to 50 pounds occasionally. (R. 895).

The ALJ gave the bulk of Dr. Purohit's opinion "considerable weight", noting that she had seen him several times during the relevant time period, and that her estimates on his ability to stand, walk, and sit for a total of four hours each in a day, and his ability to lift were consistent with the course of treatment and the overall medical record. (R. 27). But the ALJ stopped short of accepting that Mr. S. could only sit for 30 minutes at a time, walk for 30 minutes at a time, and stand for 10 minutes at a time. (R. 27). The ALJ explained that as no function studies had been performed, and the objective clinical findings didn't support such limitations, there was no way to make such estimates other than to take Mr. S.'s word for it (R. 27) – which he was not obligated to do and which he declined to do in light of the record evidence.

Mr. S. complains that the ALJ failed to supply sound reasoning for his treatment of Dr. Purohit's opinion. As a treating physician, Dr. Purohit's opinion was entitled to controlling weight

10

unless the ALJ set forth "good reasons" for assigning it lesser weight. *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018); *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). That is exactly what the ALJ did here. As the ALJ did here, an ALJ can reject a doctor's opinion if it is not supported by treatment notes or the record as a whole, *see, e.g., Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012), or if it appears to be based on the patient's subjective allegations. *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). While an ALJ must consider the factors found in 20 C.F.R. Secs. 404.1527(c); 416.927(c), he need only "minimally articulate" his reasoning. Contrary to Mr. S.'s insistence, the ALJ need not explicitly discuss and weigh each factor. *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ satisfied this standard in this case by noting the length and frequency of treatment, the supportability of Dr. Purohit's opinion, and the consistency of the opinion with other medical evidence in the record. (R. 27). *See Collins,* 743 F.App'x at 25. As such, the ALJ's decision must stand. *Elder*, 529 F.3d at 415.

According to Mr. S., the ALJ failed to acknowledge that Dr. Purohit reviewed objective medical findings and based her opinion on them. [Dkt. # 16, at 10]. That's not true, and distortion of the record is not a basis to overturn an ALJ's decision. The ALJ recited Dr. Purohit's objective findings, but a 4/5 motor exam, normal gait, and intact reflexes, are not much to support an ability to stand or sit for the limited periods claimed by Mr. S. And the doctor cited nothing else – nor does Mr. S., for that matter. [Dkt. # 16, at 10-12]. Dr. Purohit may have reviewed the rest of the evidence as Mr. S. claims she did [Dkt. # 16, at 9], or she may not have. The ALJ never said she didn't – although there's no indication in the record that she did; Mr. S. certainly doesn't point to any. It was

11

up to him to develop and support his arguments with references to the record. *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018)("As has become 'axiomatic' in our Circuit, '[j]udges are not like pigs, hunting for truffles buried in' the record.'"); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n.5 (7th Cir. 1992).

In any event, the only examination notes from Dr. Purohit appear to be from July 2014, and October 2014. In July, Mr. S. was an hour late for his appointment and brought the form from his attorney for Dr. Purohit to fill out. (R. 855, 1092). His only complaints were urinary frequency, dysphagia, and peeling skin on his hands. (R. 855, 1092). It was noted that Mr. S. had a history of joint and back pain, and decreased sensation over L5 distribution, but assessment was left until the next visit. (R. 858-59, 1094-95). In October 2014, the doctor noted a history of varicocele/epididymitis and lower back pain, (R. 1253). Right leg strength was slightly diminished to 4/5, left leg strength was normal. (R. 1254). Right leg sensation was decreased. (R. 1254). And that's it.

Mr. S. complains that, while the ALJ specifically recounted these findings in his opinion (R. 25-26), the case should be remanded because he then did not specifically say he was discounting Dr. Purohit's opinion based on these two specific reports. [Dkt. # 21, at 7]. What an extraordinary exaltation of form over substance. Not only does the argument ignore the obvious, it is, at best, a perfect example of the type of nitpicking, the Seventh Circuit rightly "refuse[s] to engage in." *Burnam v. Colvin*, 525 F. App'x 461, 464 (7th Cir. 2013). *See also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); *Castile v. Astrue*, 617 F.3d 923, 928–29 (7th Cir.2010). As we are reminded time and again courts are "to give the opinion a commonsensical reading rather than nitpicking at it." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

The ALJ summarized Dr. Purohit's examination notes, then summarized the form she filled out, then said the form was not supported by her *objective findings and notes*. (R. 26-27). It's not clear what more Mr. S. requires. Whatever it may be, it is not reasonable or realistic. Under the consistent case law and the Regulations, a treating doctor's opinion is not to be automatically accepted. Quite the contrary. "'While the treating physician's opinion is important, it is not the final word on a claimant's disability.'" *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). As the Seventh Circuit has stressed, "'[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* (quoting *Stephens v. Heckler,* 766 F.2d 284 (7th Cir.1985). *See also Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir.2006) ("the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits) will often bend over backwards to assist a patient in obtaining benefits," and therefore "the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances") (internal citations omitted).

Moreover, Dr. Purohit's assessment in the form was that Mr. S.'s problem was a *mild* disc bulge; but, the doctor concluded, he could still perform *at least* sedentary work for 8 hours a day, 5 days a week. (R. 893). The doctor wasn't asked what more he could do because, clearly, couching the questionnaire in the way it was, Mr. S.'s attorney was expecting a negative answer to the question of whether he could work competitively full-time at all. (R. 893).[5] She didn't get the answer she hoped for.

---

[5] The attorney asked, "in your opinion, to a reasonable degree of medical certainty, does your patient retain the functional ability to work in a competitive environment, in even a sedentary occupation, on a full-time, 8 hours a day, 5 days a week basis?" (R. 893).

Mr. S. also complains that the ALJ cited no evidence to support his finding that the doctor based such limitations on Mr. S.'s subjective complaints rather than clinical findings. But, again, given the clinical findings the doctor cited when prompted, what else could provide a basis? As the ALJ pointed out, Dr. Purohit didn't cite to any function study. In the doctor's October 2014 notes, she states that she "observed patient do the activities required by the paperwork and documented accordingly." (R. 1255). As the courts have long emphasized, common sense should not be left outside the administrative hearing room or at the courthouse door. *See supra* at 8; *See also District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 135 n.3 (1992); *Castile*, 617 F.3d at 930; *United States v. Blagojevich*, 614 F.3d 287, 290 (7th Cir. 2010). And common sense dictates that the doctor did not spend what would have been hours watching Mr. S. walk 4 blocks, sit for 30 minutes, stand for 10 minutes, walk for 45 minutes during a 4-hour period. (R. 893-94). As the ALJ pointed out, there is no record of any such function study. Thus, the only possible source for these very specific limitations would be Mr. S. himself. That's what the ALJ said, and rightfully so.

### C.

Finally, Mr. S. finds fault with the ALJ's assessment of his subjective allegations about his symptoms. Mr. S. first complains that the ALJ employed "meaningless boilerplate" in his decision, namely that his allegations were "not fully supported *for the reasons explained in the decision*." [Dkt. # 16, at 12](Emphasis supplied). While the Seventh Circuit has repeatedly criticized the use of boilerplate, the court has also repeatedly held that boilerplate is not toxic as long as the ALJ goes on to give his reasons for disbelieving the extent of a claimant's allegations. Thus, in *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), the court stressed that the use of boilerplate language "does not automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise

points to information that justifies [the] credibility determination." *See also Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013)(*"*the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination.")[6] Since that is what the ALJ did here, Mr. S's argument must be rejected.

The ALJ cited medical evidence, course of treatment, daily activities, and work history as all generally undermining the full extent of Mr. S.'s complaints. (R. 23-27). Each reason is a valid rationale to reject the full extent of a claimant's allegations. *See, e.g., Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018)("To be sure, a lack of objective support from physical examinations and test results is relevant, . . . ."); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)(". . . the lack of objective support from physical examinations and test results is still relevant even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain."); *Imse v. Berryhill*, _Fed.Appx._, 2018 WL 6172035, at *3 (7th Cir. 2018)("The ALJ reasonably considered the impact of [claimant's] noncompliance when assessing the limiting effects of her spinal impairment; [Claimant] declined two doctors' recommendations for physical therapy, and when she finally did seek treatment, she

---

[6] We have criticized ALJ's for saying that a claimant's allegation must be "entirely consistent with the medical and other evidence" as a misstatement of the law, which requires only that statements "can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See, e.g.,Lopez v. Berryhill*, 340 F. Supp. 3d 696 (N.D. Ill. 2018); *Dunbar v. Berryhill*, 2018 WL 4095094, at *3 (N.D. Ill. 2018); *Minger v. Berryhill*, 307 F.Supp.3d 865, 871 (N.D. Ill. 2018). But Mr. S. is mistaken in attempting to equate that type of error with the clearly introductory language used here. [Dkt. # 16, at 13]. The language the ALJ used in this case does not suggest that allegations must be entirely consistent with all the evidence, only that the evidence does not support the full extent of Mr. S.'s allegations.

failed to follow through."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (noting that "failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure"); *Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018)(daily activities are *relevant* to credibility determination); *Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005)(same); *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017)(work history "is still just one factor among many, and it is not dispositive."). And, Mr. S. is mistaken in asserting that the ALJ had to specify exactly which allegations he felt were supported by the evidence and which were not. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012)(". . . an ALJ's credibility findings need not specify which statements were not credible."); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)(ALJ did not have to specify which statements were not credible).

Beyond that, Mr. S. quibbles with just a couple of the ALJ's reasons. Not only are those objections invalid but even viewing the ALJ's decision in a light most favorable to Mr. S., all that can be said is that the ALJ's reasoning might not have been perfect. After all, no one is perfect, *Reyes-Garcia v. Rodriguez & Del Valle, Inc.*, 82 F.3d 11, 15 (1st Cir. 1996), and thus, the law does not demand perfection. *Noto v. Comm'r of Soc. Sec.*, 2015 WL 630785, at*3 (E.D. Mich. 2015); *Gantt v. Boone, Wellford, Clark, Langschmidt & Pemberton*, 559 F. Supp. 1219, 1229 (M.D. La. 1983). "Courts conducting judicial review in social security cases do not require perfect opinions or rigid, mechanical formulaic applications of governing legal principle[s]." *Wilcox v. Comm'r of Soc. Sec.*, 2018 WL 4090328, at *4 (W.D.N.Y. 2018).

The court can only reject an ALJ's assessment of a claimant's allegations if they are patently wrong. *See McHenry v. Berryhill*, 2018 WL 6787324, at *4 (7th Cir. 2018); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Shideler*, 688 F.3d at 312. That's clearly not the case here. "In this

case, the record provides adequate support for the ALJ's credibility finding." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

Mr. S.'s concerns also involve the claim that the ALJ wrongly equated his ability to attend to his hygiene, use a computer, walk to Dunkin' Donuts, and help his mother with household chores with his ability to engage in full time work. [Dkt. # 16, at 13]. If the ALJ had done that, the argument might have merit. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). But, the ALJ did not say that those activities are comparable to full-time work or that they demonstrated a capacity for full time work. Rather, his decision said those activities, along with the medical evidence, course of treatment and evidence as a whole "support[s] the residual functional capacity and do[] not support allegations of disability." (R. 27).

Second, Mr. S. argues that the ALJ was wrong to note factors like a two-year gap in treatment and failure to follow through with prescribed physical therapy without asking Mr. S. what was behind those factors. While these factors may well be significant, an ALJ should nonetheless inquire into what a claimant's reasons were for not seeking treatment or for not following his doctor's recommendations. *See, e.g., McHenry*, 2018 WL 6787324, at *5 ("... an ALJ may not draw negative inferences from a claimant's failure to seek treatment without first considering the individual's explanation.").

But, in summing up his assessment of Mr. S.'s allegations, the ALJ looked to the "course of treatment," rather than gaps in treatment or noncompliance with ordered treatment. (R. 27). As such, the reference is supportive of a finding that Mr. S.'s overall "course of treatment" was conservative. *Summers v. Colvin*, 634 F. App'x 590, 592 (7th Cir. 2016). "And even if the ALJ had concluded that the gaps undermined [Mr. S.'s] credibility, []he has not explained how []he was

harmed by the ALJ's failure to explore h[is] reasons." *Id.* Through 30 pages of briefing, Mr. S. has not offered any rationale for foregoing a period of treatment or declining physical therapy, let alone any that would withstand inquiry on remand of federal court review. After all, "'because [Mr. S.] was represented by counsel at the hearing, [he] is presumed to have made [his] best case before the ALJ.'" *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). Moreover, "if there [were] a [valid reason], one would expect [at least some attempted explanation] to that effect. There [was] none [at the hearing or in Mr. S.'s brief]. The . . . silence is deafening." *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008).[7] It is we;ll to recall that "Social Security disability evaluation is not a game of 'gotcha!' wherein a claimant may lie in wait for the Commissioner to make a technical error, and seize upon that error to secure a second bite at the apple." *Watson v. Berryhill*, 2017 WL 5517978, at *4 (D. Kan. 2017).

**CONCLUSION**

The "logical bridge" requirement is not about *elegantia juris or* aesthetics. The ALJ need not build the Pont Neuf. A simple trestle will suffice so long as it allows the reviewing court to traverse safely the divide between the evidence and the conclusions. It is, after all, a lax requirement, as the Court of Appeals reminds us. *Elder*, 529 F.3d at 415; *Berger*, 516 F.3d at 545. All that is needed is that the ALJ "'minimally articulate'" the reasons underlying the decision. . *Id. See also Barner*

---

[7] Mr. S.'s argument that the ALJ should have asked questions related to his sporadic work history fails for the same reason. Even in Social Security cases, lawyers have some obligation to make the case for their clients, and under consistent Seventh Circuit decisions they are presumed to have done so. They cannot delegate everything to the judge and then cry foul and point the finger at the ALJ for allegedly not having fulfilled his or her functions. Not only do the Rules and Regulations applicable to Social Security cases not allow the kind of abdication of responsibility suggested by the current argument, but through 30 pages of briefing, plaintiff's counsel never shared with the court his justification for not posing one or two simple questions to his own client and for leaving, in his view, a gap in the record.

*v. Colvin*, 2015 WL 6501248, at *8 (N.D. Ill. 2015)(St. Eve, J.). The ALJ's explanations in this case are more than sufficient.

For the foregoing reasons, the Commissioner's motion for summary judgment affirming the ALJ's decision [Dkt. # 19] is granted.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/21/19